UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 19-cr-194 (KBJ) |
| ) | |
| ROBERT LEAKE, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

This Court has previously explained its view of the scope of a district court's statutory authority to release a detained defendant due to the COVID-19 pandemic. *See United States v. Wiggins*, No. 19-CR-258 (KBJ), 2020 WL 1868891, at *4–6 (D.D.C. Apr. 10, 2020) (describing the statutory framework for a post-conviction, pre-sentencing defendant seeking release); *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *2–3 (D.D.C. Mar. 30, 2020) (same for pre-trial defendant). For the reasons explained below, Defendant Leake—who is detained pre-trial and has filed a motion requesting emergency release from custody on three alternative grounds—has not (1) demonstrated that COVID-19 is material to the Court's assessment of his dangerousness for the purpose of 18 U.S.C. § 3142(f), (2) shown that his temporary release to the custody of his child's mother is authorized under section 3142(i), or (3) established that his continued detention under present circumstances violates his constitutional right to due process. However, this Court will review any subsequent motion for Leake's release that is accompanied by sufficient evidentiary support for defense counsel's assertion that Leake has an underlying medical condition that makes him especially vulnerable to harm if he contracts COVID-19 while he is in detention.

Therefore, the instant emergency motion for release from pretrial detention (ECF No. 34) will be **DENIED WITHOUT PREJUDICE**.

I.

Leake was arrested on June 12, 2019, after a grand jury indicted him on four counts: unlawful possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g); unlawful possession with intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); unlawful possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).  (*See* Indictment, ECF No. 1.)  After Leake waived his right to a detention hearing and conceded detention, Magistrate Judge Meriweather ordered him detained pending trial.  (*See* Minute Entry of June 17, 2019.) In support of this detention determination, Magistrate Judge Meriweather found, among other things, that the charged offenses created a rebuttable presumption of detention that Leake had failed to rebut; that the Government's evidence was strong; that Leake has a history of non-compliance with conditions of supervised release and prior convictions for firearm offenses; and that, given his criminal history and the nature of the charged offenses, Leake's release would pose a danger to the community.  (*See* Order of Detention, ECF No. 14, at 3–4.)  Thus, Magistrate Judge Meriweather concluded that no conditions of release would "reasonably assure the safety of any other person and the community."  (*Id.* at 2.)

Leake's emergency motion for release (*see* ECF No. 34) first argues that his release is now authorized by section 3142(f) of Title 18 of the United States Code (*see id.* at 19–26).  Section 3142(f) provides that, at any time prior to trial, a detention determination "may be reopened" if new information "that was not known to the

movant at the time of the hearing" surfaces that has a "material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  As this Court explained in *Lee*, the COVID-19 pandemic certainly qualifies as such new information, *see* 2020 WL 1541049, at *4, but the Court must still determine whether the emergence of the new coronavirus has a "material bearing" on any of the section 3142(g) factors that must be considered when the court decides whether or not a defendant should be detained pending trial, *United States v. Dabney*, No. 20-CR-27 (KBJ), 2020 WL 1867750, at *2 (D.D.C. Apr. 13, 2020).[1]

The global pandemic cannot have a material bearing on the first two detention factors, because it does not alter "the nature and circumstances" of the charged offenses, 18 U.S.C. § 3142(g)(1), nor does it impact "the weight of the evidence" against Leake, *id.* § 3142(g)(2).  It appears that neither party here disputes this finding.  (*See* Def.'s Mot., ECF No. 34, at 19 (arguing that the pandemic impacts the Court's analysis of the last two factors); Gov't Opp'n, ECF No. 35, at 4–7 (arguing that COVID-19 has no material bearing on any of the factors).)

The Court further concludes that the global pandemic also does not materially bear on the relevant analysis of the fourth factor, i.e., the Court's evaluation of "the

---

[1] Notably, "[t]he Bail Reform Act generally requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that 'no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community[.]'" *Lee*, 2020 WL 1541049, at *2 (quoting 18 U.S.C. § 3142(e)(1)).  Under section 3142(f) only new information that has a "material bearing" on this assessment of flight risk and/or dangerousness warrants the reopening of a defendant's detention hearing, which means that the information must necessarily impact the four factors that courts evaluate to determine flight risk and/or dangerousness, which are outlined in section 3142(g): "(1) the nature and circumstances of the offense charged, . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . ; (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

*danger* to any person or the community that would be posed *by the [defendant's] release*[.]" 18 U.S.C. § 3142(g)(3) (emphasis added).  Leake argues that, to make this assessment, this Court should weigh the benefits of releasing Leake against the dangers that his release might pose. (*See* Def.'s Mot. at 23.)  But as the Court explained in *Lee*, the relevant statutory inquiry pertains solely to the dangers that a person's release poses to any person or the community (consistent with the required ultimate determination of whether there are conditions of release that could ensure the safety of the community). *See* 2020 WL 1541049, at *5.  And with this statutory analysis firmly in mind, this Court must conclude that Leake's release, with or without conditions, would pose a significant danger to the community for at least two reasons.

First of all, the government has proffered strong evidence of Leake's commission of the alleged offenses, and that evidence indicates that not only did Leake actively resist being arrested, he was also carrying a gun on his person at the time of his apprehension. (*See* Def.'s Mot. to Suppress Tangible Evidence, ECF No. 18; Gov't Opp'n to Def.'s Mot. to Suppress, ECF No. 20; Gov't Exh. 1, ECF No. 31 (body-worn camera footage presented at suppression hearing); Hr'g Tr., ECF No. 30, at 62:10–11 (admitting Government's Exhibit 1 into evidence).)  Second, and perhaps even more important, Leake is alleged to have committed the instant offense *while he was on supervised-release status* for a 2016 offense, and at the time of the 2016 offense, *he was being supervised for a 2011 offe*nse.  (*See* Gov't Opp'n at 8.)  Based on this history of active resistance to arrest and non-compliance with supervised release conditions, there is a danger that, if he is released, Leake "will continue to engage in the same types of unlawful and potentially dangerous conduct that led to both his initial conviction and the charge of unlawful firearms possession that is at issue in this case[.]" *Lee*, 2020 WL 1541049, at *5.  Moreover, and importantly, this Court would

be compelled to order "intensive supervision—up to and including regular home visits and electronic monitoring[,]" *id.* at \*5 n.6–and, thereby, Leake's release would also pose "heightened safety risks . . . to the probation officers who would be tasked with monitoring his behavior while he is out of jail[,]" *id*. at \*5.

Consequently, the only section 3142(g) factor that might tip in favor of Leake's release due to the COVID-19 pandemic is the third factor: the history and characteristics of the defendant. *See* 18 U.S.C. §3142(g)(3); *see also Dabney*, 2020 WL 1867750, at \*2. But Leake's generic contention that he has asthma (*see* Def.'s Mot. at 20) is, at present, entirely unsupported. Thus, this contention is also manifestly insufficient to support his release. That is, in the absence of documentation of this alleged personal characteristic, Leake has neither established that COVID-19 is material to the Court's decision regarding whether or not to reopen the detention hearing under section 3142(f), nor demonstrated that the section 3142(g)'s history and characteristics factor should be rebalanced such that the Court can, and should, reevaluate the detention decision and order Leake's release. *See, e.g., United States v. Bailey*, 19-CR-391 (JDB), ECF No. 49, at 5 (D.D.C. Apr. 2, 2020) (denying motion where defendant "presented no evidence that her medical conditions place her at high risk for a severe case of COVID-19"); Minute Order, *United States v. Brooks*, 19-CR-67 (RCL) (D.D.C. Apr. 4, 2020) (in a post-plea case, denying motion for release because defendant "has not shown whether [his] asthma is mild, moderate, or severe" and "[t]he CDC guidelines specify that moderate to severe asthma creates a higher risk of serious complications from COVID-19"); *see also* Order, *United States v. Davis*, 19-CR-292 (JDB), ECF No. 157, at 2–3 (D.D.C. Apr. 6, 2020) (granting motion for temporary release where defendant presented medical records showing that he is "currently

suffering from acute bronchitis and taking five medications, including albuterol and prednisone, a corticosteroid that is an anti-inflammatory and immunosuppressant").

For all of these reasons, this Court finds that the new information that Leake has presented—the COVID-19 pandemic—does not have a "material bearing" on any of the section 3142(g) factors, such that reopening Magistrate Judge Meriweather's initial detention decision in this case is warranted at this time.[2]

## II.

In the alternative, Leake seeks release under section 3142(i) of Title 18, which authorizes the Court to grant the temporary release of a detainee to "the custody of a United States marshal or another appropriate person[,]" where such release is "necessary for preparation of the [detainee's] defense or for another compelling reason." 18 U.S.C. § 3142(i); (*see also* Def.'s Mot. at 26–29). The burden of proof that pertains to identifying an "appropriate" custodian for section 3142(i) purposes has not been clearly established, but it is widely accepted that "[a] defendant has the burden of showing that temporary release is 'necessary' under Section 3142(i)." *Lee*, 2020 WL 1541049, at *3 (quoting *United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020)). Leake argues that he should be released into the custody of his child's mother (*see* Def.'s Mot. at 29), and that his temporary release is necessary both to prepare for his defense (*see id.* at 27–29), and because COVID-19 is a compelling reason to release him in light of his underlying health condition (*see id.* at 26–27).

---

[2] Defense counsel has represented that Leake's medical records from within the District of Columbia Department of Corrections are presently being sought. (*See* Def.'s Reply at 6–7.) If medical evidence surfaces and is such that Leake's alleged physical characteristics become relevant to the Court's consideration of the materiality of the COVID-19 pandemic, Leake may renew the instant motion.

6

With respect to the need to prepare for his defense, Leake explains that, as a result of COVID-19, the D.C. Jail has suspended in-person attorney visits and is instead allowing 15-minute calls with attorneys—a circumstance that Leake maintains denies him "meaningful opportunities to communicate with his counsel, review discovery, or otherwise participate in his defense." (*Id.* at 27.)  It is difficult to ascertain why such access is necessary at this point in time, however, given that Leake has been detained since June 12, 2019, and apparently had access to both his attorney and the discovery materials in this case for months prior to the Department of Correction's recent access restrictions.  Indeed, defense counsel was able to consult with Leake and prepare a comprehensive motion to suppress (*see* ECF No. 18), the content of which indicates that Leake has already reviewed most, if not all, of the government's evidence, including body-worn camera footage of the events that led to his arrest.  Moreover, on March 5, 2020, this Court conducted a lengthy evidentiary hearing with respect to the suppression motion, during which Leake was present in the courtroom and both sides presented witnesses and documentary evidence.[3]

Nor does Leake contend that he has been entirely unable to communicate with his counsel.  To be sure, courts have found that the suspension of *all* legal visits may warrant the temporary release of a defendant who is otherwise unable "to prepare his defenses" under certain circumstances, such as when the defendant is accused of an "alleged violation of supervised release" and "the merits hearing [is] scheduled for" the following week. *Stephens*, 2020 WL 1295155, at *3.  There is no scheduled proceeding that requires imminent preparation by Leake and his counsel here, and the mere fact

---

[3] This is just to say that it appears that the bulk of the work pertaining to the immediate preparation of Leake's initial defenses has already been done.  And although counsel have not yet delivered their closing arguments with respect to Leake's suppression motion due to the closure of the courthouse, Leaks' release motion does not argue that his temporary release is necessary to prepare for the final oral argument portion of the suppression hearing.

7

that counsel calls are now shorter and generally more difficult to schedule or conduct (*see* Def.'s Mot. at 27) cannot be all that is needed to support the contention that a defendant's temporary release is "necessary" under section 3142(i).  Indeed, if every pretrial detainee is entitled to temporary release under that statute "just because it would aid a defendant's ability to work with counsel," then "the exception in section 3142(i) would swallow all detention orders." *United States v. Villegas*, No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020).

To the extent that Leake also argues that his temporary release is necessary for the compelling reason that his asthma makes him especially vulnerable to injury if he contracts COVID-19 (*see* Def.'s Mot. at 26–27), he has not yet provided specific information with respect to this physical condition, as mentioned above, and as a result, this Court simply cannot evaluate whether the heightened risks of COVID-19 necessitate his release.  Moreover, and in any event, section 3142(i) only authorizes the temporary release of a defendant "in[to] the custody of a United States marshal or another appropriate person[,]"  18 U.S.C. § 3142(i), and it is not at all clear that Leake's child's mother (*see* Def.'s Mot. at 29) counts as an "appropriate person" under the statute. *Compare, e.g.,* Minute Entry of Mar. 20, 2020, *United States v. Courtney*, No. 19-cr-413, (D.D.C.) (during an oral ruling, denying release under § 3142(i) on the grounds that the defendant's sister was not an "appropriate" third-party custodian but granting release on alternative grounds) *with United States v. Perez*, No. 19-cr-297, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (temporarily releasing the defendant to the custody of his wife on 24-hour house arrest).  Leake's motion does little to establish that this proposed custodian is "appropriate" in terms of actually being qualified to be given such responsibility.  And, even so, based on the plain text of section 3142(i) and the *noscitur a sociis* canon, there is ample reason to doubt that

Congress intended for "another appropriate person" to be anyone other than a law enforcement officer. *Cf. Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) (noting that, where the meaning of a word is "otherwise obscure or doubtful[,]" that word "may be known by the company it keeps" under that canon).

Thus, Leake has not demonstrated that his temporary release is authorized by section 3142(i).

### III.

Finally, it is clear to this Court that Leake's constitutional arguments (*see* Def.'s Mot. at 29–33) are likewise presently unavailing. To begin with, the Eighth Amendment does not apply to pretrial detainees (*see* Def.'s Mot. at 31–33); rather, its principles are incorporated into the Fifth Amendment's Due Process Clause with respect to defendants who have not yet been convicted. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Furthermore, to prevail on his contention that the Fifth Amendment's Due Process Clause requires this Court to release him (*see* Def.'s Mot. at 29), Leake must satisfy the substantive legal standards that apply to valid claims of cruel and unusual punishment—that is, he must establish that the challenged pretrial detention conditions "(1) rise to an objective level of a 'serious' deprivation, and (2) result from the official's subjective 'deliberate indifference.'" *Lee*, 2020 WL 1541049, at *5 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

A judge in this district is currently entertaining such a constitutional claim in an unrelated civil action, *see Banks v. Booth*, No. 20-cv-849 (CKK) (D.D.C. Mar. 30, 2020), and if the plaintiffs in that case are successful, the outcome would redound to the benefit of all of the detainees who are currently residing in the District of Columbia's correctional facilities, including Leake. In the meantime, however, Leake's motion merely argues that the conditions of his confinement "create an unreasonable risk of

9

exposure to COVID-19 and do not provide the necessary supplies . . . to protect against contraction of the virus" (Def.'s Mot. at 30), and without more, he has neither made a compelling case that a constitutionally cognizable deprivation is presently occurring nor demonstrated that the District of Columbia Department of Corrections is deliberately indifferent to the needs and circumstances of the people who are in their custody.  Thus, Leake's Fifth Amendment argument fails.

## IV.

In short, for the foregoing reasons, Leake's detention hearing is not subject to reopening under section 3142(f), nor has Leake shown that the COVID-19 pandemic necessitates his release under 3142(i).  This Court also rejects the argument that Leake's continued pretrial detention presently violates his constitutional rights.  The Court will reconsider its determinations if and when Leake presents sufficient evidence to substantiate his claim that he has an underlying medical condition that makes him particularly susceptible to injury from contracting COVID-19, or upon resolution of the factual disputes regarding the constitutional adequacy of conditions at the D.C. Jail.  *See Banks*, No. 20-cv-849.

In the meantime, however, it is hereby

**ORDERED** that the Defendant's emergency motion (*see* ECF No. 34) is **DENIED WITHOUT PREJUDICE**.

Date:  April 17, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge