UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 19-cr-194 (KBJ) |
| ROBERT LEAKE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S SUPPLEMENTAL MOTION FOR EMERGENCY RELEASE**

On April 7, 2020, Defendant Robert Leake filed an emergency motion with this Court seeking release from pretrial detention due to COVID-19.  (*See* Def.'s Mot. for Release from Custody ("Def.'s Mot."), ECF No. 34.)  The Court denied Leake's motion without prejudice, on the grounds that Leake had failed to show either (1) that the COVID-19 pandemic had a material bearing on the Court's assessment of his dangerousness for the purpose of 18 U.S.C. § 3142(f), or (2) that his temporary release was necessary due to the compelling reason of the COVID-19 pandemic for purposes of 18 U.S.C. § 3142(i).  *See United States v. Leake*, No. 19-CR-194 (KBJ), 2020 WL 1905150, at *1–4 (D.D.C. Apr. 17, 2020).  The Court also rejected Leake's argument that his continued pretrial detention in D.C. Jail violates his constitutional rights.  (*See id*. at *4–5.)  Because the Court's analysis of Leake's request for release turned in part on Leake's alleged (but unsubstantiated) underlying medical condition, however, the Court noted that Leake could renew his motion for release if he was able to provide "sufficient evidence to substantiate his claim that he has an underlying medical condition that makes him particularly susceptible to injury from contracting COVID-19[.]" *Id.* at *5.

1

Leake has now filed a supplemental motion for release from custody in which he presents additional facts concerning his alleged underlying medical condition—asthma—and authorizes the Court to seek his medical records from the D.C. Department of Corrections ("D.C. DOC"). (*See* Def.'s Mot. to Renew and Suppl. the Def.'s Emergency Mot. for Release ("Def.'s Renewed Mot."), ECF No. 40, at 1–2.)[1] Leake also asserts that, if released, his sister would serve as a third-party custodian. (*See id.* at 2.) In response to Leake's supplemental motion, the Court ordered D.C. DOC to produce Leake's medical records (*see* Order, ECF No. 41), which the Court now possesses, and the Government filed a memorandum opposing Leake's renewed request for release (*see* Gov't Opp'n to Def.'s Renewed Mot. ("Gov't Opp'n"), ECF No. 42).

Having considered these additional materials, this Court finds that Leake's asthma is substantiated, and that his underlying medical condition has become relevant to the issue of whether or not Leake should be detained pretrial in light of the intervening emergence of COVID-19 in the detention facility where Leake is being held. Given that relevant medical conditions implicate a court's evaluation of a defendant's history and characteristics under section 3142(g)(3)(A), such that a reopening of the original detention determination may be warranted under section 3142(f), *see United States v. Dabney,* No. 20-CR-27 (KBJ), 2020 WL 1867750, at *2 (D.D.C. Apr. 13, 2020), this Court easily finds that COVID-19 is "information . . . that was not known to [Leake] at the time of his [detention ] hearing" and that does have a "material bearing on the issue [of] whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community" in light of Leake's medical condition. 18 U.S.C. § 3142(f). But, unfortunately for Leake, it is

---

[1] Page-number citations to the D.C. DOCuments that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

equally clear to this Court that, after the pretrial detention determination is reopened, the section 3142(g) factors still weigh in favor of his detention, for the reasons explained below. In addition, Leake has not shown, for the purposes of section 3142(i), that there is a compelling reason for his temporary release or that his sister is an appropriate person into whose custody he could be released. Furthermore, even if D.C. DOC "has proven unable to handle the [COVID-19] crisis[,]" as Leake's motion claims (Def.'s Renewed Mot. at 2), Leake has not provided any new evidence that compels a different conclusion regarding his constitutional claims than the one that the Court reached in its previous decision. *See Leake*, 2020 WL 1905150, at \*5.

## I.

To evaluate whether or not Leake's mild, intermittent asthma tips the balance in favor of his pretrial release with respect to the detention factors laid out in section 3142(g) due to the COVID-19 pandemic, the Court begins by recalling that Leake is charged with four drug and gun offenses, three of which carry a statutory rebuttable presumption of dangerousness, and thus, of pretrial detention. (*See* Order of Detention, ECF No. 14, at 3.)[2] While "[a] defendant's 'burden of production' to rebut the Bail Reform Act's presumption of detention is not 'heavy,'" *Dabney*, 2020 WL 1867750, at \*2 (citation omitted), he must still "offer some credible evidence contrary to the statutory presumption[,]" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

---

[2] A rebuttable presumption in favor of detention arises under 18 U.S.C. § 3142(e)(3) for, among other offenses, violations of the Controlled Substances Act (21 U.S.C. §§ 801-904) that carry a maximum term of imprisonment of 10 years or more and for offenses arising under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3)(A)–(B). Leake has been charged with unlawful possession with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B)(iii), which carries a maximum term of imprisonment of 40 years, and unlawful possession with intent to distribute heroin in violation of 21 U.S.C. § 841(b)(1)(C), which carries a maximum term of imprisonment of 20 years. In addition, Leake is being charged with unlawfully possessing a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Thus, these three offenses all create a rebuttable presumption in favor of detention. Leake is also charged with unlawful possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g), which does not, on its own, carry a rebuttable presumption in favor of detention.

And even if the defendant rebuts the presumption in favor of detention, the court must still evaluate the section 3142(g) factors in order to determine where there is a condition or combination of conditions that could reasonably assure the defendant's appearance and the safety of the community. *See United States v. Hunt*, 240 F. Supp. 3d 128, 133 (D.D.C. 2017) ("Assuming that defendant has come forward with some credible evidence to counter the presumption, the Court must then consider all of the factors set forth in section 3142(g)[.]"); *see also United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (internal quotation marks and citation omitted) (holding that a finding that detention is required to prevent a defendant's flight "need only be supported by a preponderance of the evidence," while a finding that detention is required for the "safety of the community" requires "clear and convincing evidence"). Leake does not appear to offer evidence to rebut the statutory presumption of detention directly, but his original emergency motion states that he is "a lifelong DC resident, active father of two children, and has substantial ties to the community and their school." (Def.'s Mot. at 20.) Assuming, *arguendo*, that these statements are sufficient to rebut the statutory presumption of dangerousness, the record nevertheless clearly demonstrates that the section 3142(g) factors continue to weigh in favor of Leake's detention, despite the fact that COVID-19 is now prevalent in the D.C. Jail and may pose a heightened risk of harm due to his asthma.

      With respect to the first two section 3142(g) factors—the nature and circumstances of the charged offenses and the weight of the evidence, *see* 18 U.S.C. § 3142(g)(1), (2)—Leake is charged with serious and dangerous offenses, including unlawful possession with intent to distribute both cocaine base and heroin, and possession of a firearm during a drug trafficking offense in violation of section 924(c)(1) (*see* Indictment, ECF No. 1), and the latter carries a five-year mandatory

minimum sentence, *see* 18 U.S.C. § 924(c)(1).  This Court has held an evidentiary hearing with respect to Leake's pending motion to suppress (*see* Minute Entry of Mar. 5, 2020), and the Government has strong evidence to support the charges, including body worn camera footage in which Leake appears to be holding a packet of drugs at the time that the officer approached him.  The video also amply demonstrates that "not only did Leake actively resist being arrested, [but] he was also carrying a gun on his person at the time of his apprehension."  *Leake,* 2020 WL 1905150, at *2.  Therefore, the first two factors of section 3142(g) plainly weigh in favor of detention.[3]

The third factor—the defendant's history and characteristics, *see* 18 U.S.C. § 3142(g)(3)—is a somewhat closer call, but still weighs in favor of pretrial detention.  Even though Leake is a "lifelong DC resident" and "father of two" with "substantial ties to the community" (*see* Def.'s Mot. at 2), he also has a significant and substantial history of non-compliance with his conditions of release, which in and of itself warrants a finding that no conditions of release could assure the safety of the community.  Indeed, Leake was on supervision for a 2016 firearms conviction when he was arrested for the instant offense, and at the time of the events that gave rise to *that* offense, he was on supervision for a firearms offense that occurred in 2011.  *Leake,* 2020 WL 1905150, at *2.  The Court also observes that Leake's children and substantial ties to the community were apparently insufficient to deter him from possessing illegal controlled substances and a loaded firearm in a laundry room that was literally across the hallway from the daycare center that housed the after-school program that his daughter attends.  (*See* Hr'g Tr., ECF No. 30, at 28:7–12.)

---

[3] This characterization of the government's evidence does not forecast the outcome of the dispute over Leake's motion to suppress, because the Court's reflections relate solely to the detention factor's focus on the strength of the evidence against a defendant, which *assumes* its admissibility.  By contrast, Leake's motion to suppress asks the Court to exclude this evidence regardless of (and indeed, perhaps, *because* of) its tendency to incriminate the defendant.

Thus, although this Court is mindful that Leake's asthma puts him at higher risk of injury from COVID-19 if he is detained in D.C. Jail, it is clear that, on balance, Leake's history strongly suggests that he would be a danger to the community if he is released, and thus, the section 3142(g)(3) factor weighs in favor of detention, and the fourth detention consideration—i.e., "the nature and seriousness of the danger" posed by Leake's release, 18 U.S.C. § 3142(g)(4)—does as well. *See also Leake,* 2020 WL 1905150, at *2 (determining that Leake's release "would pose a significant danger to the community" because of his prior resistance when confronted by law enforcement, his possession of narcotics and a firearm within a communal space, and his history of non-compliance with conditions of supervision).

In short, the Court finds, by clear and convincing evidence, that all four of the section 3142(g) factors support the conclusion that there are no conditions or combination of conditions that can reasonably assure the safety of the community if Leake is released, which means that the reopening of Leake's detention hearing yields no benefit to him because the outcome of the detention inquiry remains the same.

**II.**

Leake's other supplemental arguments—that his asthma makes it necessary for him to be released into his sister's custody under section 3142(i) in light of the COVID-19 pandemic (*see* Def.'s Renewed Mot. at 2), and that it is now clear that continued detention violates Leake's constitutional rights given that "[a]t least 140 inmates have now contracted the disease" (*id.*)—fare no better. The Court cannot conclude that Leake's having mild, intermittent asthma inside a detention facility where COVID-19 is present, standing alone, is a sufficiently compelling reason to necessitate his release, and this is especially so given the recent court order requiring D.C. DOC to take specific steps to protect persons inside the D.C. Jail, *see Banks v. Booth*, No. 20-CV-

6

849 (CKK), 2020 WL 1914896, at *13–15 (D.D.C. Apr. 19, 2020), as well as the absence of any contention that Leake's condition is not being treated in jail (*compare* Def.'s Renewed Mot. at 1 (noting that Leake has an inhaler in his possession) *with Dabney*, 2020 WL 1867750, at *1 (describing defendant's assertion that infirmary would not replace inhaler).)[4]  Leake has also failed to establish that the proposed temporary custodian—his sister—would be an "appropriate person" to take custody of him, either in fact or within the meaning of the statute.  *See Leake*, 2020 WL 1905150, at *4 (explaining that "there is ample reason to doubt that Congress intended for 'another appropriate person' to be anyone other than a law enforcement officer"); *see also United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020) (explaining that a "motion for release [under § 3142(i)] must address how [a proposed custodian] would be an 'appropriate person' within the meaning of section 3142(i)").  And given that Leake has also failed to provide any new evidence or information that demonstrates "that a constitutionally cognizable deprivation is presently occurring[,]" or that D.C. DOC "is deliberately indifferent to the needs and circumstances of the people who are in their custody[,]" *id.* at *5, the Court has no basis on which to alter its previous finding that Leake's constitutional rights have not been violated, *see id.*

## III.

For the forgoing reasons, this Court cannot conclude that Leake's release from pretrial detention is warranted, despite the reopening of the detention inquiry due to his

---

[4] In addition, Leake's medical records, which D.C. DOC has provided directly to this Court, reflect that Leake has recently been subject to quarantine and is being monitored for symptoms of COVID-19, which suggests that D.C. DOC is aware of the risks to Leake in particular and is being responsive to concerns about his exposure to the virus.

established asthma and the additional arguments that are presented in his Supplemental Motion for Release.  Consequently, it is hereby

**ORDERED** that the Defendant's supplemental motion (*see* ECF No. 40) is **DENIED**.

Date:  May 10, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge